IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CYRUS CROSKERY,<br><br>Defendant. | Case No. 22-cr-59-DKW-WRP<br><br>**ORDER DENYING DEFENDANT CYRUS CROSKERY'S MOTION TO SUPPRESS STATEMENTS** |

On July 21, 2022, a grand jury indicted Defendant Cyrus Croskery on eight counts, ranging from conspiracy to distribute methamphetamine and fentanyl to various firearms-related offenses. *See* Dkt. No. 20. Croskery now moves to suppress self-incriminating statements allegedly uttered during a custodial interrogation after his February 3, 2022 arrest. Dkt. No. 26 ("Motion").[1] He asserts that the interrogation was conducted absent *Miranda* warnings and/or that any *Miranda* waiver was invalid because it was made while under the influence of drugs and in response to physical and psychological coercion. *Id.*

---

[1] Croskery additionally moved to suppress a statement ("it's in my right pocket") he allegedly uttered immediately after his arrest in Waikiki and before any interrogation by law enforcement. Dkt. No. 26 at 7–8. The Government has since indicated that it does not intend to rely on that statement during its case-in-chief at trial because the evidence obtained from Croskery in the immediate aftermath of that utterance occurred as a result of a search incident to his probable cause-based arrest. Dkt. No. 34 at 6. Croskery did not reply to the Government's position, either in writing or at oral argument on the Motion. Therefore, the Court deems the issue conceded by Croskery, and the Motion moot as to that statement.

1

Upon consideration of the written briefs and evidence and arguments presented during a December 9, 2022 evidentiary hearing on this matter, *see* Dkt. No. 51, the Court finds that Croskery was properly *Mirandized* prior to any interrogation and that he knowingly, voluntarily, and intelligently waived his rights prior to making the incriminating statements. The Motion is therefore DENIED.

## **LEGAL STANDARD**

The Fifth and Sixth Amendments to the U.S. Constitution afford certain protections to criminal detainees during custodial interrogations. *See* U.S. Const. amends. V, VI (outlining the rights against self-incrimination and of counsel). Accordingly, prior to any custodial interrogation, law enforcement officials must provide what has become known as *Miranda* warnings. If such warnings are not provided, evidence obtained as a result of an interrogation risks exclusion prior to trial. As the Supreme Court recently summarized:

> The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The Clause "permits a person to refuse to testify against himself at a criminal trial in which he is a defendant" and "also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" In addition, the right bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion.
>
> In *Miranda*, the Court concluded that additional procedural protections were necessary to prevent the violation of this important right when suspects who are in custody are interrogated by the police.

> To afford this protection, the Court required that custodial interrogation be preceded by the now-familiar warnings mentioned above, and it directed that statements obtained in violation of these new rules may not be used by the prosecution in its case-in-chief.

*See Vega v. Tekoh*, 142 S. Ct. 2095, 2101 (2022) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)) (other citations omitted).

Although warnings in these circumstances must generally be given, a detainee may waive his *Miranda* rights. *Miranda*, 384 U.S. at 444–45. If the waiver, though, is not voluntary, knowing, and intelligent, it is invalid, and any statements obtained still risk exclusion. *See id.* at 465.

In order to be considered voluntary, a waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) and *Brewer v. Williams*, 430 U.S. 387, 404 (1977)). "An admission is involuntary if coerced either by physical intimidation or psychological pressure." *United States v. Shi*, 525 F.3d 709, 730 (9th Cir. 2008) (citation omitted).

In order to be considered knowing and intelligent, a waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421 (citing *Edwards*, 451 U.S. at 482 and *Brewer*, 430 U.S. at 404). In the Ninth Circuit, several factors are relevant to evaluating whether a waiver is knowing and intelligent:

(i) the defendant's mental capacity;

(ii) whether the defendant signed a written waiver;

(iii) whether the defendant was advised in his native tongue or had a translator;

(iv) whether the defendant appeared to understand his rights;

(v) whether the defendant's rights were individually and repeatedly explained to him; and

(vi) whether the defendant had prior experience with the criminal justice system.

*United States v. Price*, 980 F.3d 1211, 1226–27 (9th Cir. 2019) (quoting *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007)).

It is the Government's burden to prove the validity of any *Miranda* waiver. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421.

## RELEVANT FACTUAL ALLEGATIONS

On January 31, 2022, a non-fatal shooting occurred in Waikiki. During its investigation into the shooting, the Honolulu Police Department ("HPD") identified Croskery as a suspect both in the shooting and as a methamphetamine distributor. On February 2, 2022, HPD and Drug Enforcement Administration ("DEA") investigators began surveilling Croskery. They followed Croskery to the

La Croix Hotel in Waikiki and established surveillance on his hotel room. After witnessing an individual leave Croskery's hotel room and engage in a suspected drug transaction with the occupants of a van, and confirming the drug transaction after arresting the individual and seizing the van, investigators obtained a search warrant for Croskery's hotel room.

      At 1:31 a.m. on February 3, 2022, before execution of the search warrant, Croskery and a female companion exited their hotel room and entered the lobby of the La Croix. Croskery, noticing the presence of law enforcement officers, attempted to flee on foot. Officers gave chase, and a brief struggle on the sidewalk adjacent to the hotel ensued. Despite the officers' commands, Croskery resisted being handcuffed, while repeatedly reaching toward his pants pocket and waistband area. Ultimately, officers gained Croskery's compliance and handcuffed him without relevant injury to Defendant or any of the arresting officers. Upon conducting a pat-down search-incident-to-arrest, HPD recovered a loaded 9 mm privately-made "ghost" gun from the pocket or waistband area toward which Croskery had been reaching.

      At approximately 1:45 a.m., DEA agents executed the search warrant on Croskery's hotel room and recovered approximately one pound of methamphetamine, approximately 530 pills containing fentanyl, ten needles containing an unknown liquid, used drug paraphernalia, and four cell phones.

Croskery was transported to the DEA's Honolulu office. At approximately 3:00 a.m., DEA Special Agent Gabriel Gray and another officer initiated a custodial interrogation of Croskery in DEA's interview room. The interrogation was not video- or audio-recorded, nor was such recording required by DEA policy. After SA Gray issued *Miranda* warnings to Croskery by reading from a standard issue DEA 13A card, Croskery verbally acknowledged that he understood his rights, waived his rights, and proceeded to answer questions, during which he made several incriminating statements. *See, e.g.*, Dkt. No. 34 at 4–5. Croskery was later indicted on eight counts, pursuant, in part, to these statements. *See* Dkt. No. 20.

## RELEVANT PROCEDURAL BACKGROUND

On August 8, 2022, Croskery moved to suppress his February 3, 2022 custodial statements, claiming both that *Miranda* warnings were not provided, and that, even if they were, he did not waive his *Miranda* rights voluntarily, knowingly, or intelligently. Dkt. No. 26. On September 21, 2022, the Government opposed the Motion. Dkt. No. 34. Croskery was afforded an opportunity to file an optional reply (Dkt. No. 27) but did not do so.

The Court presided over an evidentiary hearing on this matter on December 9, 2022. *See* Dkt. No. 51. During the hearing, the Government presented the sworn testimony of two witnesses: DEA Special Agent Gabriel Gray and HPD

Officer Masakazu Kurita.  Croskery cross-examined both witnesses, but offered none of his own.  Following witness testimony, the Court heard oral argument from both sides.  The Court has carefully considered the parties' evidence, briefs, and arguments, and this Order now follows.

## DISCUSSION

Croskery claims law enforcement violated *Miranda* in four ways.

First, he contends that law enforcement did not inform him of his *Miranda* rights.  Motion at 9 ("Defendant was not informed in clear and unequivocal terms of each of his Miranda rights.").

Second, he notes that law enforcement "utterly failed to audio record or video tape their *Miranda* advisory and the subsequent interrogation" and "failed to provide a written waiver of rights form to Defendant or have Defendant sign off on any type of written waiver of rights form."  Motion at 5.  He reasons, "[B]ecause law enforcement failed to document and/or record Defendant being advised of his rights, and Defendant's supposed legitimate waiver of said rights, there really is no substantive proof of what law enforcement [] actually told Defendant, and what Defendant actually said in response."  *Id.* at 9.

Third, Croskery contends that any waiver he provided was neither knowing nor voluntary because it took place "when he was under the influence of narcotics, at a time in which he was battling his substance abuse addiction."  *Id.* at 6

(claiming he used narcotics on the evening of his arrest).  During the evidentiary hearing on this matter, defense counsel noted that used drug paraphernalia was recovered from Croskery's hotel room on the night of his arrest and argued that "the only logical conclusion" was that Croskery had used drugs that night.  *See* Dkt. No. 47 at 2.

Fourth, Croskery contends that his waiver was obtained by physical and psychological coercion.  He first claims that officers promised him and his girlfriend leniency if he cooperated.  *Id.* at 5, 10–11 (stating that law enforcement promised that "if he told them what they wanted to hear, they would help him 'get time off of your sentence'" and that "'your girlfriend will stay out of this'").  He also claims he "was the victim of law enforcement's physical abuse" when he was apprehended outside the hotel lobby.  *Id.* at 11 ("Defendant reports being thrown stomach down to the hard pavement, held down by law enforcement's knee to his back, gun to Defendant's head, with law enforcement demanding that Defendant give them information.").

In light of all the evidence and arguments, the Court finds that law enforcement properly administered the requisite *Miranda* warnings, and Croskery's waiver was valid.

With regard to Croskery's first contention, the evidence—in particular, the credible testimony of SA Gray—shows that law enforcement read the proper

8

*Miranda* warnings to Croskery in DEA's interview room in the early morning hours of February 3, 2022 before beginning the interrogation. SA Gray testified that he personally did so and did so in a particular way: by reading from a standard issue DEA 13A card, as he routinely did with detainees, the contents of which SA Gray read into the record at the evidentiary hearing. With no evidence offered to contradict SA Gray's testimony, there is no basis to Croskery's claim to having not been clearly informed of his *Miranda* rights on the evening in question.

Regarding Croskery's second contention, the Government does not deny that they did not document the provision of *Miranda* warnings or Croskery's waiver through a recording or writing. Dkt. No. 34 at 4; Dkt. No. 51 (SA Gray's testimony). That said, law enforcement is not required to do so. Although a written waiver of rights, for instance, is one of the several factors to be considered in determining whether a waiver is knowing and intelligent, lack of a written waiver is not dispositive. *See Price*, 980 F.3d at 1226–27. As stated, according to SA Gray's credible and uncontradicted testimony during the evidentiary hearing, SA Gray issued *Miranda* warnings to Croskery by reading, verbatim, from a DEA-issued card. Gray testified that he keeps one of three identical cards on his person at all times precisely for this purpose, and he demonstrated for the Court how he read the card aloud on February 3, 2022. In the absence of any conflicting

evidence, the Court finds that the *Miranda* warnings were properly given prior to the interrogation, despite the absence of any recording or written waiver.

The Court also finds, in response to Croskery's third contention, that Croskery was not impaired by narcotics to the point that he could not provide a voluntary or knowing waiver of his rights on February 3, 2022. *See Matylinsky v. Budge*, 577 F.3d 1083, 1095–96 (9th Cir. 2009) ("[A]n intoxicated individual can give a knowing and voluntary [*Miranda*] waiver, so long as that waiver is given by his own free will."). The only evidence that Croskery was impaired at all on February 3 are his bare assertion in the Motion that he had used narcotics that night and law enforcement's recovery of a used methamphetamine pipe from his hotel room, along with drugs and other paraphernalia. The discovery of the pipe is a far cry from compelling evidence that Croskery even used drugs prior to the interrogation: though the pipe had been used *at some point* in time, there is no evidence it was used that night, much less by Croskery, as multiple individuals entered and exited that same hotel room on the evening in question. Nor does Croskery offer *any* evidence of the *extent* of his alleged impairment. An impairment, without more, does not vitiate an otherwise valid waiver. *Id*. Moreover, and as important, credible evidence showed that Croskery was *not impaired* when he waived his rights. SA Gray testified that, in his substantial past experience with observing individuals under the influence of drugs, both in his

10

capacity as a DEA Special Agent and his former capacity as a police officer in San Diego, Croskery did not exhibit symptoms of impairment when he listened to his *Miranda* rights and agreed to waive them. To the contrary, Croskery spoke clearly, he was not hyperactive, fidgeting, agitated or lethargic, and he was not slow to answer or respond. Rather, Croskery was lucid and forthcoming during the interrogation.

Finally, the Court finds that there was no improper psychological or physical coercion. SA Gray credibly testified that he made no promise of leniency in exchange for Croskery's compliance during the interrogation. On the contrary, SA Gray specifically told Croskery that agents are not permitted to and do not make promises of leniency because that is the prerogative of prosecutors and the court. SA Gray appropriately admitted to telling Croskery that, in his experience, prosecutors sometimes offer leniency to criminal defendants who cooperate with law enforcement. But this sort of dialogue does not constitute coercion. *See United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988) ("An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect.").

With regard to Croskery's allegation of physical abuse, credible testimony by HPD Officer Kurita showed that the altercation on February 3 was limited in duration, lasting approximately thirty seconds, and that it was reasonably necessary to ensure the safety of the officers, bystanders, and Croskery himself, especially in light of Croskery's repeated attempts to reach toward what turned out to be a loaded handgun in his waistband[2] and officers' knowledge that Croskery was a suspect in a shooting that occurred only a few nights prior.  Moreover, this physical struggle was remote in time relative to the interrogation, did not result in any injury, and did not involve the same law enforcement officers who conducted the interrogation.  Any connection between the struggle and the waiver of rights is thus too attenuated to render Croskery's waiver involuntary.

In sum, the evidence shows that Croskery's waiver was willful, voluntary and not the product of coercion or other improper influence.

//

//

//

---

[2]Officer Kurita testified that he placed his knee on Croskery's back during the struggle and applied approximately two "distractionary strikes" to Croskery's face in order to gain control over his arms.  *See* Dkt. No. 51.

12

## CONCLUSION

For the foregoing reasons, Croskery's Motion to Suppress, Dkt. No. 26, is DENIED.

IT IS SO ORDERED.

DATED: December 14, 2022, at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge

---

*United States of America vs. Cyrus Croskery*; CR No. 22-00059 DKW-WRP; **ORDER DENYING DEFENDANT CYRUS CROSKERY'S MOTION TO SUPPRESS STATEMENTS**